UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Jay M.,[1]

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

23-CV-0576-LJV
DECISION & ORDER

_____

On June 22, 2023, the plaintiff, Jay M. ("Jay"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On October 6, 2023, Jay moved for judgment on the pleadings, Docket Item 6; on November 6, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 7; and on November 20, 2023, Jay replied, Docket Item 8.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Jay applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Jay's motion in part and denies it in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.    THE ALJ'S DECISION

On August 16, 2022, the ALJ found that Jay had not been under a disability since his alleged onset date of January 1, 2018.  *See* Docket Item 3 at 31.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.* at 24-25.

At step one, the ALJ found that Jay had not engaged in substantial gainful activity since his alleged onset date.  Docket Item 3 at 26.  At step two, the ALJ found that Jay suffered from several severe, medically determinable impairments: "history of pulmonary emboli[;] lumbar arthralgia with history of lumbar surgery; liver disease; gastritis; history of right rotator cuff surgery; osteoarthritis of the bilateral wrists; history of thrombocytopenia[;] and ventral hernia."  *Id.*

At step three, the ALJ found that Jay's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 28.  More specifically, the ALJ found that Jay's physical impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine), 1.18 (abnormality of a major joint in any extremity), 5.05 (chronic liver

3

disease), and 7.08 (disorders of thrombosis and hemostasis). *Id*. In assessing Jay's mental impairments, the ALJ found that Jay was not limited in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace, and that he had only mild limitations in adapting or managing himself. *Id.* at 27.

The ALJ then found that Jay had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 C[.]F[.]R[. §§] 404.1567(b) and 416.967(b)" except that:

> [Jay] can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours and sit six hours in an eight-hour workday. [Jay] can frequently reach, handle, and finder[;] occasionally climb ladders, ropes, or scaffolds[;] and occasionally work around hazards such as dangerous machinery or heights. Furthermore, [Jay] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch[,] and crawl.

*Id.* at 28-29.

At step four, the ALJ found that Jay could perform his past relevant work as a land surveyor. *Id.* at 31. Therefore, the ALJ found that Jay had not been under a disability or entitled to SSI or DIB from January 1, 2018, through August 16, 2022, the date of the decision. *See* Docket Item 3 at 31-32.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

## II. ALLEGATIONS

Jay argues that the Commissioner erred in two ways. Docket Item 6-1 at 1. First, he argues that the ALJ "failed to support her decision with substantial evidence where the record contained no opinion evidence regarding [Jay's] functional limitations and abilities." *Id.* at 11. Second, he argues that the "Appeals Council improperly rejected new and material evidence that undermined the ALJ's conclusions." *Id.* at 15. This Court agrees that the ALJ erred and, because that error was to Jay's prejudice, remands the matter to the Commissioner.

## III. ANALYSIS

Jay first argues that the ALJ erred in determining his RFC with "no medical opinion from any medical source upon which to base the RFC finding." *Id.* at 13. More specifically, he argues that "the ALJ was obligated to provide an explanation connecting the evidence with her RFC finding that was detailed enough to allow for meaningful review, and that was supported by substantial evidence." *Id.* at 14. Although this Court disagrees with the suggestion that the ALJ needed opinion evidence to support the RFC, it nevertheless agrees with Jay that the reasons provided for the ALJ's decision were inadequate.

An RFC need not correspond perfectly with "any of the opinions of medical sources cited in [the ALJ's] decision," *Matta v. Astrue,* 508 F. App'x 53, 56, (2d Cir. 2013), or even be based on opinion evidence, *see Corbiere v. Berryhill,* 760 F. App'x 54, 56 (2d Cir. 2019) (summary order). But it is well-settled that an ALJ's reasoning "must be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial

evidence." *Moss v. Comm'r of Soc. Sec.,* 2020 WL 896561, at *3 (W.D.N.Y. Feb. 25, 2020).  "An ALJ is of course free to analyze medical records to determine what the weight of the evidence supports, but that does not give him . . . license to interpret raw medical data that would require the expertise of a physician or other trained medical source."  *Kelly W. v. Comm'r of Soc. Sec.,* 2022 WL 600838, at *4 (W.D.N.Y. Mar. 1, 2022) (internal quotation marks and citation omitted).

Here, the ALJ found that Jay's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Docket Item 3 at 29.  The ALJ then largely recited results from imaging and reports, using medical jargon that did not relate the results to Jay's impairments, and concluded that the RFC addresses Jay's limitations.  *Id.* at 29-31.  And that conclusory finding based on raw data was not "sufficiently discernible" to allow this court to understand the ALJ's analysis, let alone "ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence."  *See Moss,* 2020 WL 896561, at *3.

For example, the ALJ noted lab results that showed "prothrombin gene mutation and lupus anticoagulant" and "evidence of mild thrombocytopenia with platelet count of 115,000," *id.* at 29-30 (citing *id.* at 543-44, 882, 885); an MRI showing "evidence of diffuse fatty infiltration of the liver," *id.* at 30 (citing *id.* at 591, 902); an x-ray that showed "evidence of radio scaphoid arthritis, but with negative Phalen's, Tinel's, carpal tunnel compression, and grip test on examination," *id.* at 30 (citing *id.* at 915); and a CT that "returned evidence of a history of laminectomy defect at the L5-S1 with minimal grade 1 anterolisthesis," *id.* at 30 (citing *id.* at 902).  Likewise, the ALJ noted diagnoses of

"pulmonary emboli in right lung, but no DVT in the lower extremities," *id*. at 29; "elevated liver enzymes compatible with alcohol[-]induced liver disease," *id*. at 30 (citing *id.* at 590); "right wrist arthritis and tendinitis," *id*. at 30 (citing *id.* at 608); and "laminectomy defect at the L5-S1 with minimal grade 1 anterolisthesis," *id*. at 30 (citing *id.* at 902).

Then, after reciting those technical findings and diagnoses—without any explanation whatsoever—and after discounting the opinion evidence as "not persuasive," the ALJ concluded that "the undersigned has fully accounted for the overall evidence of record by limiting [Jay] to light exertional work with the ability to frequently reach, handle and finger, occasionally climb ladders, ropes, or scaffolds, occasionally work around hazards, and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl." *Id.* at 31. How those technical findings and diagnoses translated into those limitations is anyone's guess.

Moreover, all of the medical opinions found simply that the record was insufficient to determine Jay's limitations.[5] An ALJ may not substitute his or her lay judgment for the opinions of medical professionals, and when there is no medical opinion to support a claimant's ability to perform a certain function, the ALJ cannot create an RFC from whole cloth. *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a

---

[5] For example, on November 4, 2020, H. Tzetzo, M.D., concluded that there was insufficient evidence in the record to determine Jay's current psychiatric impairments. Docket Item 3 at 245. On November 5, 2020, Gary Ehlert, M.D., completed a medical evaluation and determined that there was insufficient evidence to conclude whether Jay had a severe medical impairment. *Id.* at 234-39. On March 1, 2021, V. Baronos, M.D., likewise determined that there was insufficient evidence to "rate the claim." *Id.* at 256. On March 3, 2021, D. Brown, Psy.D., also found there was insufficient evidence to determine whether Jay had a psychiatric impairment. *Id.* at 257.

7

certain level of] work, it is well-settled [sic] that the ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion." (citations and quotations omitted)). Indeed, the ALJ explicitly found that the opinions in the record had no "probative value" and were "not persuasive." *See* Docket Item 3 at 30-31 (Drs. Ehlert and Baronos); *see also id.* at 26-27 (Drs. Tzetzo and Brown). So no medical provider's opinion supported the ALJ's conclusions which apparently came from the raw medical data in a way that this Court cannot follow. *Michael A. v. Comm'r of Soc. Sec.,* 2023 WL 185419, at *3 (W.D.N.Y. Jan. 13, 2023) ("[W]ithout a medical opinion supporting a claimant's functional capacity, the ALJ cannot base the claimant's RFC only on raw medical data unless that data allows a layperson to do so and the ALJ explains the commonsense link between the data and the RFC." (citations omitted)); *Michael J. L. v. O'Malley,* 2024 WL 3738069, at *4 (N.D.N.Y. Aug. 9, 2024) ("In this case, the ALJ has done little more than state that the medical findings support an ability to perform a full range of light work without providing any logical explanation as to why that is. Such 'because I said so' rationale is simply not enough to allow the [c]ourt to find that the ALJ's conclusion is supported by substantial evidence.").[6]

---

[6] To be sure, remand is not always necessary when an ALJ makes an RFC determination in the absence of a medical opinion. *See Tankisi v. Comm'r of Soc. Sec.,* 521 F. App'x 29, 34 (2d Cir. 2013). But when the records "do not shed any light on [the claimant's RFC]" and "offer no insight into how [his] impairments affect or do not affect [his] ability to work," the ALJ is obligated to seek an opinion assessing those limitations. *Guillen v. Berryhill,* 697 F. App'x 107, 108-09 (2d Cir. 2013) (summary order); *see Williams v. Comm'r of Soc. Sec.,* 366 F. Supp. 3d 411, 417 (W.D.N.Y. 2019) ("The [c]ourt agrees with [p]laintiff that the ALJ in this case erred in assessing [p]laintiff's RFC in the absence of any medical opinion."); *Dennis v. Colvin,* 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) ("Defendant argues that the ALJ's RFC finding does not need to track any single medical opinion. While this may be true, here there is no medical opinion at all supporting the ALJ's finding; this is not a matter of an ALJ's RFC finding simple diverting somewhat from the supporting medical opinion."); *Monica J. v. Comm'r of Soc.*

What is more, the medical evidence that the ALJ purported to rely on seems to undermine the RFC.  For example, the ALJ acknowledged that Jay suffered from the severe impairment of osteoarthritis of the bilateral wrists, Docket Item 3 at 26, and summarized the medical evidence documenting Jay's treatment for wrist pain spanning several years, *id.* at 30, but still found—without explanation—that Jay could lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; frequently reach, handle, and finger; and occasionally climb ropes, scaffolds, and ladders, *id.* at 28-29.  At best, the ALJ reached a conclusion without an explanation; at worst, she formulated an RFC incompatible with the evidence.

In sum, the ALJ's decision was largely a recitation of the medical findings, repeating medical lingo without translation or explanation, followed by a conclusion that those technical findings supported the RFC limitations that the ALJ found.  That is clearly insufficient.  *See Hazelwood v. Comm'r of Soc. Sec.,* 2013 WL 4039419, at *5 (N.D.N.Y. Aug. 6, 2013) ("The ALJ is not qualified to assess a plaintiff's RFC on the basis of bare medical findings, and where the medical findings in the record merely diagnose a plaintiff's impairments and do not relate those diagnoses to a specific RFC, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.").  Under the circumstances here, without "some useful assessment of [Jay's] limitations from a medical source," *see Williams,* 366 F. Supp. 3d at 417 (internal quotation marks and citation omitted), it is impossible for this Court to

---

*Sec.,* 2022 WL 447160, at *5 (W.D.N.Y. Feb. 14, 2022) ("Without a medical opinion on the record, without a useful assessment of [p]laintiff's functional limitations, and with evidence suggesting greater limitations on [his] work-related abilities, the RFC is not supported by substantial evidence." (citation omitted)).

9

meaningfully review the ALJ's conclusions based only on raw medical data without explanation, *see Jaleesa H. v. Comm'r of Soc. Sec.,* 580 F. Supp. 3d 1, 9 (W.D.N.Y. 2022)*; see also Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)) (holding that an ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that ' . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'") (third alteration in original); *Laura C. v. Comm'r of Soc. Sec.,* 529 F. Supp. 3d 64, 71 (W.D.N.Y. 2021) (finding that meaningful judicial review was precluded when the Court was "left to speculate" about the ALJ's reasoning). Stated another way, the ALJ's "terse and conclusory analysis is inadequate because it frustrates this Court's meaningful review."  See *Darla W. v. Comm'r of Soc. Sec.,* 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021); *see also Gorny v. Comm'r of Soc. Sec.,* 2018 WL 5489572, at *4 (W.D.N.Y. Oct. 29, 2018) (concluding that where the ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence supported [her] RFC findings," her decision leaves the reviewing court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review").[7]

---

[7] The Court "will not reach the remaining issues raised by Jay because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103-04 (W.D.N.Y. 2020).